IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**JULIA IVEY**                                                                                           **PLAINTIFF**

v.                                                                              Civil No. 2:21-cv-08-HSO-RHWR

**TURBO GROUP OPERATIONS, INC.**                                                  **DEFENDANT**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT TURBO GROUP OPERATIONS, INC.'S
MOTION [28] FOR SUMMARY JUDGMENT**

**BEFORE THE COURT** is the Motion [28] for Summary Judgment filed by Defendant Turbo Group Operations, Inc. This Motion is fully briefed. Having considered Defendant's Motion [28] on its merits, the related pleadings, the record, and relevant legal authority, the Court is of the opinion that the Motion [28] for Summary Judgment should be granted in part and denied in part. Defendant will be granted a partial summary judgment as to Plaintiff Julia Ivey's hostile work environment claim, which will be dismissed. Plaintiff's remaining claim for retaliation will proceed.

I. BACKGROUND

A.   Factual background

Plaintiff Julia Ivey ("Plaintiff" or "Ivey") began working for Defendant Turbo Group Operations, Inc. ("Defendant" or "Turbo") on February 15, 2017. Ex. [28-3]. Turbo owns and operates convenience stores, and Plaintiff was employed as a

1

cashier at Turbo's Pine Belt Discount Beer and Tobacco at the time of the events at issue in this case. Ex. [28-2]. While Ivey was working on August 2, 2017, Shawn Gray ("Gray"), an employee of Southern Beverage Company, Inc., arrived to restock the store's beer cooler. Ex. [28-5] at 39-40. Gray allegedly approached Ivey as she was taking inventory of the store's cigarettes and noticed that her cellular phone was unlocked and opened to the Buffalo Wild Wings website. *Id.* Gray asked if he could look at the website, and Ivey permitted him to look at her phone. *Id.* at 41. Ivey asserts that while she continued to count cigarettes, she heard Gray's phone alert as though it had received several messages in a row. *Id.* Gray handed Ivey's phone back to her, and when Ivey swiped down on its notification screen to see if anyone had sent her a message, *id.*, she noticed that her phone had just shared a topless photograph of herself, *id.* at 45. Ivey believed that Gray had shared this picture while he was using her phone, because

> I seen where I shared this photo, and I didn't share this photo. And that's how I knew that he did it. Not to mention his phone was going ding, ding, ding, ding, ding on the counter and he had this huge smirk on his face like it was funny.

*Id.* at 47.

Ivey later determined that the number to which Gray had sent the photograph to was his own phone number. *Id.* at 48. She told Gray to leave the store and called her supervisor, Nancy Smith ("Smith"), to complain about what had happened. *Id.* at 48-49. Smith responded that she would come to the store immediately, and Smith arrived about an hour later, along with Eddie Merrill ("Merrill"), a manager for Turbo. *Id.*

2

Ivey asserts that as she was telling her supervisors what had occurred, they pressured her not to jeopardize the business relationship with Southern Beverage:

> Eddie basically told me that being that I was a recovering addict, that I knew and understood about mercy, grace, forgiveness and second chances and that I just need to forget about all of this. And that I had a future at Turbo Group, and that if I made a big deal about this, it would probably damper my career and future with them greatly. That's what Eddie said to me.

*Id.* at 50.

Smith has testified that she and Merrill met with Ivey to learn the specifics of what occurred, and then contacted Gray's supervisor at Southern Beverage, Billy Clark ("Clark"). Ex. [28-3] at 1. Clark assured Smith and Merrill "that he would take care of it." *Id.* Smith's impression was that Gray would no longer be servicing the store where Ivey worked. *Id.*

According to Ivey, two days later, on August 4, 2017, Gray returned to the store with two employees of Southern Beverage and brought Ivey a Yeti cooler containing beer. Ex. [28-5] at 63. Ivey considered this gift to be "a bribe" for her silence. *Id.* She claims that both Smith and Merrill were present, *id.* at 65, but Smith contends that she was not, Ex. [28-3] at 1. Ivey asserts that Merrill encouraged her to accept the cooler. Ex. [28-5] at 66.

Three days after Gray brought Ivey the cooler, Merrill presented Ivey with a notice of disciplinary action for "personal conduct," specifically for "talking and complaining to another cashier" about another employee's poor work ethic. Ex. [28-2] at 45. Ivey signed the bottom of the disciplinary write-up form, acknowledging that she had received it, *id.*, but she asserts that this disciplinary notice involved

events that happened several weeks prior to the date indicated on the notice, Ex. [28-5] at 54. One week later, on August 14, 2017, Smith contacted Ivey to inform her of her termination, citing poor performance and violation of company policies. Ex. [28-3] at 2. According to Ivey, she received notice of her termination via a text message from Smith. Ex. [28-5] at 62.

Defendant has presented evidence of four other disciplinary notices, Ex. [28-2] at 45-51, but Ivey argues these were based upon events that never occurred; further, she maintains that these notices were never presented to her and were fabricated after she was terminated. Resp. [31] at 7. The first notice was dated August 8, 2017, Ex. [28-2] at 46, and states that the reason for discipline was "violation of company rules" for wearing shorts that "were too short and revealing." *Id.* The notice related that Ivey was sent home to change into shorts that complied with the company uniform. *Id.* Ivey did not sign this disciplinary form, *id.*, and at her deposition she testified that she had never seen the notice before, nor was she ever sent home for a uniform violation, Ex. [28-5] at 76.

The second notice, dated August 11, 2017, was for "violation of company policy" for talking on the telephone while interacting with customers. *Id.* at 47. Ivey did not sign this disciplinary form, *id.*, and she testified that the only person she spoke with on the phone was her supervisor, Ex. [28-5] at 78. Ivey claims that she never received this notice during the time she was employed by Defendant and that it was fabricated after her termination. *Id.*

The third notice was also dated August 11, 2017, and lists the grounds for discipline as "personal conduct," "violation of company rules," and "other just cause." Ex. [28-2] at 50. The notice states that Ivey "made deflanitary [sic] remarks to another employee . . . about our company. Comments like these cause a hostile work environment and will not be tolerated." *Id.* Ivey did not sign this form, and she has testified that this conversation occurred around August 5, 2017, and was only used against her later as an excuse to fire her after she purportedly jeopardized Defendant's business relationship with Southern Beverage Company. Ex. [28-5] at 81.

The final notice was dated August 14, 2017, and lists "excessive tardiness or absenteeism" and "violation of company rules" as the reasons for discipline. Ex. [28-3] at 11. The "action taken" is identified as "termination," effective August 14, 2017. The notice states that Ivey was late to work on four days, as follows:

> Monday 8/7/17        34 minutes late
> Wednesday 8/9/17  9 minutes late
> 8/11/17                  3 minutes late
> 8/12/17                  5 minutes late

*Id.*

Ivey did not sign this notice, and stated in her deposition that she was "pretty sure that [she] was late a few times before August, but [Defendant] only wanted to write [her] up after [she] reported [what Gray had done]." Ex. [28-5] at 82.

Merrill asserts that Ivey was terminated "for her behavior, job performance, excessive tardiness, personal conduct causing problems between employees and violations of company policy," Ex. [28-2] at 1, but Ivey maintains that she was

5

terminated in retaliation for her complaints and for considering suing Southern Beverage Company, claiming that

> [w]hen I told Eddie I was going to do something about Shawn Gray doing that and I was gonna let them know, let Southern Beverage know I was going to have an attorney, that's when he fired me, but not until then.

Ex. [28-5] at 51-52.

Ivey further contends that that prior to the events surrounding this lawsuit, she had no prior disciplinary history, and her employers had informed her that they wanted to promote her to management. Ex. [28-5] at 51.

B.  Procedural background

On December 21, 2020, Ivey filed her Complaint [1-1] in the Circuit Court of Lamar County, Mississippi, alleging violation of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). She specifically brought claims for hostile work environment and retaliation. Compl. [1-1] at 3. Turbo filed a Notice of Removal on January 26, 2021, invoking this Court's federal question jurisdiction under 28 U.S.C. §1331.

Turbo has filed the present Motion [28] for Summary Judgment, taking the position that Plaintiff's harasser was not a Turbo employee and that Turbo responded appropriately when Ivey made her complaints. Mem. [29] at 10. Turbo also argues that Ivey was terminated for legitimate, non-retaliatory reasons. *Id.* at 13.

Ivey responds that Turbo did not take appropriate action when it learned of her harasser's behavior, Resp. [31] at 4, and that Defendant's proffered reasons for her termination are mere pretext, based upon fabricated evidence, *id.* at 7.

## II. DISCUSSION

A. <u>Summary judgment standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant satisfies this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the nonmovant must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

In deciding whether summary judgment is appropriate, the Court views all facts and inferences in the light most favorable to the nonmovant. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). If the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case" at trial, then the Federal Rules of Civil Procedure "mandate" the entry of summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Conclusory allegations and unsubstantiated assertions are not enough for a

nonmovant to survive a motion for summary judgment. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

B.  Analysis

1.  Plaintiff's hostile work environment claim

In her Response [31], Ivey concedes her hostile work environment claim. Resp. [31] at 5. The Court will dismiss this claim.

2.  Plaintiff's retaliation claim

a.  Relevant law

Plaintiff claims that she "was terminated just days after she complained about a male vendor." Resp. [31] at 5. To support a claim for retaliation under Title VII, a plaintiff must show that "(1) [she] engaged in conduct protected by Title VII; (2) [she] suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015). An employee has engaged in protected activity when she has "opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

If the plaintiff makes a prima facie showing, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its employment decision. *See Aryain v. Wal-Mart Stores Texas LP,* 534 F.3d 473, 484 (5th Cir. 2008). "The employer's burden is only one of production, not persuasion, and involves no

8

credibility assessment." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). If the employer carries this burden, the plaintiff then bears the burden of proving that the employer's proffered reason is not true, but is instead a pretext for retaliation. *Id.* "The proper standard of proof on the causation element of a Title VII retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred 'but for' her protected conduct." *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).

b.  <u>Plaintiff's prima facie case</u>

To establish a prima facie case, Ivey must show that "(1) [she] engaged in conduct protected by Title VII; (2) [she] suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Jenkins*, 784 F.3d at 269.

An employee has engaged in protected activity when she has "opposed any practice made an unlawful employment practice . . ." 42 U.S.C. § 2000e–3(a). "To satisfy this opposition requirement, [she] need only show that she had a 'reasonable belief that the employer was engaged in unlawful employment practices.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (citing *Byers v. Dallas Morning News*, 209 F.3d 419, 428 (5th Cir. 2000)). Ivey reported Gray's conduct to her supervisors, Ex. [28-5] at 51-52, in opposition to what she believed was an unlawful employment practice, namely sexual harassment, *see Frank v. Harris Cty.*, 118 F. App'x 799, 803 (5th Cir. 2004) (plaintiff could assert claim against employer based on a non-employee's harassment if the employer knew of

9

the harassment). Thus, at the summary judgment stage, Ivey has shown a triable issue on whether she reasonable believed that her response to Gray's conduct constituted activity protected by Title VII.

Ivey also suffered a material adverse employment action, because Turbo terminated her employment. *See Paul v. Elayn Hunt Corr. Ctr.*, 666 F. App'x 342, 346 (5th Cir. 2016). Therefore, Ivey has satisfied the second prong.

Turning to the third prong, Ivey has adduced sufficient evidence to create a fact question whether a causal connection existed between her protected activity and the adverse employment action. Specifically, Ivey was fired less than two weeks after engaging in the protected activity. Ex. [28-5] at 51-52. "[C]lose timing between the protected activity and adverse employment action may provide evidence of a causal link." *Schroeder v. Greater New Orleans Fed. Credit Union*, 664 F.3d 1016, 1025 (5th Cir. 2011). "[T]he mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case." *Id*. However, extremely close temporal proximity may be sufficient to satisfy this prong. *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 949 (5th Cir. 2015) (citing a gap of less than two months as precedent to find close temporal proximity where a six-and-a-half-week timeframe passed between the protected activity and the alleged retaliation). Because the timeframe between Ivey's protected conduct and her termination was one week and because of the other evidence she has adduced, she has presented sufficient evidence to survive

summary judgment on causation and she has stated a prima facie case of retaliation.

c. <u>Defendant's legitimate, non-retaliatory reason for termination</u>

Because Ivey has presented sufficient evidence to support a prima facie case, the burden shifts to Turbo to articulate a legitimate, non-retaliatory reason for its decision. *McCoy,* 492 F.3d at 557. "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *Id.*

Turbo has produced evidence of what it maintains are five separate disciplinary notices for Ivey. Ex. [28-2] at 45-51. It alleges that Ivey was late on several occasions, did not wear her store uniform, used her cell phone for personal reasons while engaging with customers, and complained about other Turbo employees. *Id.* At the summary judgment stage, this is sufficient to carry Defendant's burden of production.

d. <u>Plaintiff's showing of pretext</u>

Because Turbo has presented legitimate, non-retaliatory reasons for its termination decision, Ivey must create a triable issue that Turbo's proffered reasons for her termination are not true, but are instead pretext for retaliation. *McCoy,* 492 F.3d at 557.

Ivey contends that she had maintained a clean disciplinary record during her employment, until after the incident with Gray when she complained and mentioned to Turbo that she might sue Southern Beverage. Resp. [31] at 6. Defendant's evidence of Ivey's complaint and her disciplinary conduct does not

contradict this assertion. *See generally* Ex. [28-2]. Each disciplinary notice post-dates Ivey's assertion that she was considering legal action against Southern Beverage. *Id.* Ivey also argues that all but one of the disciplinary notices were fabricated, and points out that she did not sign four of the five. Ex. [28-5] at 51; Resp. [31] at 7.

In addition, Plaintiff argues that the rapid appearance of disciplinary notices following her complaints, especially when she had never received a single one in her six months of employment prior to August 2017, casts doubt on the sincerity of Defendant's justifications. Resp. [31] at 9. "[T]he combination of suspicious timing with other significant evidence of pretext . . . can be sufficient to survive summary judgment." *Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 619 (5th Cir. 2020) (plaintiff demonstrated pretext when she showed that defendant fired her the same day the company became aware of her complaints of gender discrimination).

The timing of these disciplinary notices, coupled with Ivey's evidence that the proffered reasons for termination were not true based upon the testimony that the disciplinary forms were falsified, is sufficient at this stage to create a material fact question on the issue of pretext. *See* Ex. [28-5] at 51; Ex. [28-2] at 45-51. Furthermore, Ivey has presented evidence that she had never received a disciplinary notice until after she engaged in Title VII protected activity. *See* Ex. [28-5].

Construing all reasonable inferences in Plaintiff's favor at this stage, as the Court must, a reasonable factfinder could find the proffered reasons for termination

12

false and infer the ultimate fact of retaliation from the falsity of the explanation. *See, e.g., Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 146–48 (2000); *Gee v. Principi,* 289 F.3d 342, 348 (5th Cir. 2002) (when a plaintiff provided deposition evidence that cast doubt on a defendant's explanation for alleged retaliation, summary judgment was not appropriate). Resolution of issues of material fact place this claim within the province of the trier of fact, and therefore summary judgment on Ivey's retaliation claim would not be appropriate.

### III.  CONCLUSION

To the extent the Court has not specifically addressed any of the parties' arguments, it has considered them and determined that they would not alter the result. The Court finds that Defendant's Motion [28] for Summary Judgment should be granted in part and denied in part.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Turbo Group Operations, Inc.'s Motion [28] for Summary Judgment is **GRANTED IN PART**, as to Plaintiff Julia Ivey's claim of hostile work environment, and **DENIED IN PART,** as Plaintiff's claim for retaliation.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Julia Ivey's hostile work environment claim is **DISMISSED WITH PREJUDICE.** Her claim for retaliation will proceed.

**SO ORDERED AND ADJUDGED,** this the 17th day of May, 2022.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE